

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

July 22, 2019

<u>**BY ECF AND HAND**</u>

The Honorable Nelson S. Roman
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

   Re: <u>United States</u> v. <u>James Gaines</u>, 18 Cr. 205 (NSR)

Dear Judge Roman:

   The Government respectfully submits this letter in advance of the sentencing of defendant James Gaines, currently scheduled for July 26, 2019 at 12:15 p.m., and in response to defendant's sentencing memorandum dated July 19, 2019.

   James Gaines was a felon when he helped fuel and then cover up a shooting committed by his friend on the streets of Yonkers in the early morning hours of July 1, 2017. Instead of telling the Yonkers Police Department officers and detectives that he had two guns, including one smeared with his friend's blood, he hid the guns in his girlfriend's apartment just feet away from her sleeping children, and later lied to the investigators about what had happened. His conduct on July 1, 2017 belies his belated theory that he intended to turn the guns over to the authorities the next day.

   After his arrest on federal charges in September 2017, Gaines was bailed, but his actions while out on bail were wholly unacceptable, causing this Court to revoke his bail in advance of his plea. As this Court heard, he pulled a gun on another girlfriend in November 2018, and then as their relationship deteriorated, sent her threatening messages and phone calls in January 2019.

   It is dangerous for felons to possess firearms. It is even more dangerous for felons to try to avoid law enforcement scrutiny by hiding guns near children. In order to reflect the seriousness of Gaines' criminal conduct, and to deter him and others from committing such crimes, the only appropriate sentence in this case is a sentence within the Guidelines range: 46 to 57 months' imprisonment.

**A. Instant Offense Conduct and Other Conduct**

   On or about July 1, 2017, Gaines lent a gun to his friend James Bowen (Presentence Investigation Report ¶ 10). At about 3:00 a.m. on July 1, Gaines and Bowen met up in the lobby of 26 Rollins Street in Yonkers. (PSR ¶ 11). A few minutes later, the two men diverged, but both

Hon. Nelson S. Roman                                                                                    Page 2
July 22, 2019

walked to a street party around the corner. (PSR ¶ 11). The two were hanging out, with each other and others, for about 45 minutes when Bowen began arguing with another man at the party. (PSR ¶ 11). The argument turned violent, and the man began stabbing Bowen. (PSR ¶ 11). Bowen reached down to his ankle, drew a gun, and fired it repeatedly. (PSR ¶ 11). Bowen then ran through the streets, waving the gun in his hand towards the stabber. (PSR ¶ 11). Bleeding from his stab wounds and still holding the gun, Bowen ran into the lobby of 26 Rollins; Gaines followed close behind. (PSR ¶ 11). Bowen handed the gun to Gaines, and the two men walked up the stairs to Apartment 3E. (PSR ¶ 11). Gaines entered into the apartment, and exited a few moments later. (PSR ¶ 11). The two men descended; and were met right outside 26 Rollins by members of the Yonkers Police Department, who took Bowen in an ambulance for treatment for the stab wounds. (PSR ¶ 11). Gaines did not mention the stabbing, the shooting, or the fact that he had just stashed guns in Apartment 3E. (PSR ¶ 11).

The next morning, members of the YPD were in the vicinity of 26 Rollins Avenue, investigating the stabbing and shooting. (PSR ¶ 12). Gaines did not mention that he knew what had happened, or, again, that he had stashed two guns in Apartment 3E. (PSR ¶ 12). At approximately 9 a.m., detectives and officers who had by then watched the interior surveillance video, knocked on the door of Apartment 3E. (PSR ¶ 12). A woman ("Woman-1") answered, and consented for the YPD to search the apartment. (PSR ¶ 12). Among others, Gaines and multiple young children then exited the apartment. (PSR ¶ 12). Gaines said nothing to the officers. (PSR ¶ 12). After a few minutes of searching, a detective found a floral bag, within which were two guns manufactured outside of New York; one of the guns was smeared in blood (later determined to be Bowen's). (PSR ¶ 12). One of the guns also had a defaced serial number. (PSR ¶ 12). Woman-1 said she had seen Gaines with the bag the previous night. (PSR ¶ 12).

Gaines was arrested and agreed to be interviewed by YPD detectives. (PSR ¶ 13). He admitted, in substance and in part, that his friend Bowen had been in a fight the previous evening. According to Gaines, after the fight, he found the two guns lying in the street, and picked them up so he could return them to the YPD pursuant to its gun buyback program. (PSR ¶ 13). After his arrest, Gaines could not make his bail, and was detained until September 28, 2017, when he was written over to federal custody. After his presentment on the federal complaint, he was ordered bailed by Judge Davison.

As this Court is aware, in January 2019, another of Gaines' girlfriends ("Woman-2"), informed Pretrial Officer Leo Barrios that Gaines had pulled a gun on her in November 2018. (PSR ¶ 16). As their relationship deteriorated, Gaines also began threatening her, via phone calls and text messages, which caused her mental and physical repercussions. (PSR ¶ 17). As a result of the threatening messages, this Court revoked Gaines' bail on February 5, 2019.

**B. Potentially Disputed Factual Issues**

In a letter dated June 2, 2019, Gaines made numerous objections to the PSR. Some of these objections were ministerial (PSR p. 19, regarding ¶¶ 51, 56, 67, 68); the Government took no position on these objections, which have been corrected in the final PSR. Gaines objected to Probation's calculation of his criminal history (PSR p. 20, regarding ¶¶ 35, 36, 37); the

Hon. Nelson S. Roman                                                                           Page 3
July 22, 2019

Government agreed with Gaines' calculation, which was consistent with the Government's *Pimentel* letter, and which Probation has now changed.

Gaines also made factual objections to paragraphs 10, 11, 16 and 17, as follows:[1]

- Contrary to paragraph 10, he did not lend a gun to Bowen before the party on July 1, 2017;
- Contrary to paragraph 11, he arrived on the street scene from around the corner, after Bowen had already been injured, and that he did not meet Bowen in the lobby of 26 Rollins Avenue or go with him to the street party;
- Full denials of the allegations in paragraphs 16 and 17.

With respect to paragraph 11, after reviewing the video, Probation has explained on page 19 of the PSR that the surveillance video from 26 Rollins Avenue shows Bowen and Gaines meeting in the lobby at approximately 3:01 a.m. At approximately 3:05 a.m., Gaines walked up the stairs, as Bowen walked out the door. At approximately 3:08 a.m., Gaines came down the stairs and exited the lobby. Subsequent external surveillance video show both Gaines and Bowen at the street party, and at various times interacting with each other. If Gaines continues to object to the description in paragraph 11, the Government can submit to the Court the various video clips, along with a description of the relevant time periods.

At the bail review hearing on February 5, 2019, the Court heard testimony from Woman-2 regarding the allegations in paragraphs 16 and 17, namely her relationship with Gaines, the fact he pulled a gun on her, and his threatening text messages and phone calls.

With respect to paragraph 10, right after the bail review hearing on February 5, 2019, the Government and an FBI Task Force Officer interviewed Woman-2 regarding other statements Gaines had made to her relevant to the instant charges. Woman-2 informed us that some time between September 28, 2017 and his bail revocation, Gaines told her that he had lent a gun to his co-defendant in the incident that led to his arrest. If Gaines continues to object to the factual assertion described in paragraph 10 that he lent a gun to Bowen, and the Court believes that this fact will affect its sentencing determination, the Government respectfully requests that the Court hold a *Fatico* hearing, at which it will call the FBI Task Force Officer who participated in the debrief of Woman-2 regarding her statement, consistent with the Federal Rules of Evidence, which allow for admission of hearsay evidence at sentencing. *See* Fed. R. Evid. 1101(d)(3).

## C. Procedural History

As mentioned above, Gaines was first arrested by state authorities on weapons charges, could not make bail, and then writted to federal custody based on a criminal complaint on September 28, 2017, presented before the Honorable Paul E. Davison, and ordered bailed. A grand jury returned an indictment charging him with one count of felon-in-possession of the two firearms found in the bag in Apartment 3E on July 1, 2017. On March 27, 2019, Gaines pleaded guilty,

---

[1] It is unclear if Gaines continues to object to the facts described in these paragraphs. To the extent he continues to object, the Government is happy to proceed with a *Fatico* hearing at an agreeable time.

pursuant to a *Pimentel* letter, before Your Honor. Sentencing was initially scheduled for July 12, 2019, but has been rescheduled to July 26, 2019 at 12:00 p.m.

At sentencing, the Government requests that the Court allocute Gaines that he knew his status as a convicted felon on July 1, 2017, when he possessed the two firearms found in the floral bag in Apartment 3E at 26 Rollins Avenue. At the time Gaines pleaded guilty on March 27, the Supreme Court had not yet decided *Rehaif v. United States*, 139 S.Ct. 2191 (June 21, 2019). In *Rehaif*, the Court held that an individual can be convicted of being a prohibited person in possession of a firearm, Title 18, United States Code, Section 922(g), only if he knew of his prohibited status at the time of the possession. Consistent with the law at the time of his plea, at the plea proceeding, Gaines did not admit that he was aware of his prohibited status on July 1, 2017, when he possessed the firearms. Thus, at sentencing, the Government respectfully requests that the Court allocute the defendant regarding his knowledge of his prohibited status. The Government understands from defense counsel that Gaines is willing to so admit at his sentencing, obviating any further litigation or submission of evidence by the Government.

## D.  Presentence Investigation Report

The Probation Office has calculated the offense level as follows, and as consistent with the Government's *Pimentel* letter: (1) pursuant to U.S.S.G. § 2K2.1(a)(4)(A), because the defendant was previously convicted of a controlled substance offense, namely and as described below, his April 10, 2008 conviction for Criminal Sale of a Controlled Substance in the Third Degree, the base offense level is 20[2]; (2) pursuant to U.S.S.G. § 2K2.1(b)(4)(B), because one of the firearms had a defaced serial number, four levels are added. The Government agrees that Gaines qualifies for the 3-point reduction for acceptance of responsibility. In total, then, his specific offense level is 21. (PSR ¶¶ 23–32).

The Government and Probation also calculate that Gaines has four criminal history points and is Criminal History Category III, based on his two convictions on April 10, 2008, for different arrests, for which he was sentenced to 1 year imprisonment. Though the convictions do not count for purposes of his Criminal History Category because they are too old, Gaines was also previously convicted of Criminal Possession of Stolen Property in the Fifth Degree; and convicted three times of Criminal Possession of a Controlled Substance in the Seventh Degree.

This offense level and criminal history category lead to a Guidelines range of 46 to 57 months' imprisonment. (PSR ¶ 81.) The Government agrees with the Probation Office's calculation.

---

[2]  On or about June 25, 2018, the Government sent an initial *Pimentel* letter to Gaines' counsel stating that the base offense level was 24, because he had sustained two controlled substance offenses: the April 10, 2008 conviction for Criminal Sale in the Third Degree, and his April 10, 2008 conviction for Criminal Sale of a Controlled Substance in the Fifth Degree. About a month after this initial *Pimentel* letter, the Second Circuit held that Criminal Sale in the Fifth Degree is not a controlled substance offense for purposes of the Sentencing Guidelines. *See United States v. Townsend*, 897 F.3d 66 (2d Cir. 2018).

Hon. Nelson S. Roman                                                                                      Page 5
July 22, 2019

The Probation Office has recommended that the Court sentence the defendant to 52 months' imprisonment.  (PSR p. 21.)

Neither Gaines nor Probation mention that Gaines spent more than 2 months in custody based on the state weapons charges, before he was ever brought into federal custody on the instant charges.  The Government believes that Gaines will receive credit for such state incarceration, pursuant to Title 18, United States Code, Section 3583(b).  In particular, that section provides: "A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed . . . that has not been credited against another sentence."  18 U.S.C. § 3582(b)(2).  Of course, the BOP—and not the Government or this Court—has the ultimate authority to calculate Gaines' sentence, *see United States v. Wilson*, 503 U.S. 329, 332-34 (1992) (holding that the Attorney General determines credits for time spent in official detention, and a district court may not award such credit).

## E.  Defendant's Sentencing Memorandum

In the defendant's July 19 Memorandum ("Gaines Memorandum"), he requests a below-Guidelines sentence of 36 months' imprisonment.  According to Gaines, his intent was not malign – "it is significant that the gun was not used in the commission of another crime, nor was it brandished or displayed to anyone," and that "he has maintained from the beginning that he found the gun on the street, and was planning to turn it in to the Yonkers Police Department for the standing reward which that department offered to people who surrendered weapons."  He also cites to his personal characteristics as meriting the below Guidelines sentence.

## F.  A Substantial Incarceratory Sentence, Namely a Guidelines Sentence, is Warranted

As the Court is well aware, the Sentencing Guidelines still provide strong guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005).  District courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings.  *Gall* v. *United States*, 552 U.S. 38, 49 (2007).  As described *supra*, and as agreed by Probation, under the Sentencing Guidelines, the defendant is subject to a sentencing range of 46 to 57 months' imprisonment.

James Gaines was a felon when he possessed a gun, which he gave to James Bowen, who was also a felon.  Gaines may not have caused the fight between Bowen and the man at the party on the street, but he gave the gun to Bowen initially, and perhaps more importantly, helped cover up the stabbing and shooting thereafter: he took the blood-soaked gun and hid it, just feet away from where his girlfriend's children were sleeping.  One of the two guns he possessed had a defaced serial number, which meant it was more difficult to track in case it was used in a crime. The seriousness of these crimes are inherent in their description.  And the defendant's arrest and charge did not deter him: he continued to access firearms, pulling a gun on Woman-2 in November 2018; and fueling distress through his threatening messages towards her.  Given his lengthy rap sheet, the only appropriate sentence is one within the Guidelines.

Gaines offers no reasons to go below the Guidelines range.  Gaines' statements that he intended to return the guns to the YPD through its gun buyback program are simply not credible. He had multiple opportunities to tell the YPD about the guns: when he met them right outside 26 Rollins with Bowen; the next morning, as they flocked to the apartment building; and when they knocked on the door of Apartment 3E.  He never did.  Instead, the detectives had to find the guns themselves, and only then did he claim he intended to return them to the YPD.

The only appropriate sentence is a sentence within the Guidelines range, of 46 to 57 months' imprisonment.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney


By: /s Samuel L. Raymond
Samuel L. Raymond
Assistant United States Attorney
(212) 637-6519


cc:  John S. Wallenstein, Esq. (via ECF)