UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

– v. –

JAMES BOWEN,

        Defendant.

18 Cr. 205 (NSR)

# THE GOVERNMENT'S MOTION *IN LIMINE* REGARDING RULINGS ON CERTAIN SUBSTANTIVE ISSUES, PRECLUSION OF A CERTAIN DEFENSE, AND PRECLUSION OF CROSS-EXAMINATION OF CERTAIN WITNESSES REGARDING CERTAIN MATTERS

 

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

Samuel L. Raymond
Benjamin A. Gianforti
Michael D. Maimin
Assistant United States Attorneys
   *- Of Counsel -*

**TABLE OF CONTENTS**

I.   Preliminary Statement ........................................................................................ 1

II.  Background ........................................................................................................ 1

   A.   Factual Background ................................................................................. 1

   B.   Procedural Background............................................................................ 3

III. The Court Should Allow The Government To Offer Certain Evidence At Trial ................................................................................................................... 3

   A.   The Victim's Statement At The Hospital About Bowen Shooting Him Is Admissible As An Excited Utterance .......................................... 4

      1.   Relevant Facts .............................................................................. 4

      2.   Applicable Law ............................................................................ 4

      3.   Discussion .................................................................................... 5

   B.   Gaines's Statements About Supplying Bowen With A Gun And Hiding Firearms On Their Behalf Are Admissible As Statements Against Gaines's Penal Interest. ............................................................. 6

      1.   Relevant Facts .............................................................................. 6

      2.   Applicable Law ............................................................................ 7

      3.   Discussion .................................................................................... 9

IV.  The Court Should Preclude Bowen From Arguing That The Jury Should Acquit In Order To Nullify The Law As Applied To Bowen........................... 11

V.   The Court Should Preclude Bowen From Engaging In Certain Lines Of Cross-Examination ........................................................................................... 12

   A.   Relevant Facts........................................................................................ 12

      1.   Gaines's Girlfriend...................................................................... 12

      2.   Law Enforcement Witnesses ...................................................... 13

   B.   Applicable Law ..................................................................................... 13

   C.   Discussion ............................................................................................. 15

VI.     Conclusion ................................................................................................ 17

## I. Preliminary Statement

The Government respectfully moves *in limine* in advance of the December 14, 2020, trial of defendant James Bowen for rulings:

- allowing the admission of an excited utterance that a man who Bowen had just shot made to the police, pursuant to Federal Rule of Evidence 803(2);

- allowing the admission of co-defendant James Gaines's confession to his girlfriend that he gave Bowen a gun before, and hid Bowen's gun after, the shooting that is at the center of this case, as a statement against penal interest, pursuant to Federal Rule of Evidence 804(b)(3);

- precluding the defense from arguing for jury nullification;

- precluding the defense from cross-examining Gaines's girlfriend about misdemeanor arrests and convictions; and

- precluding the defense from cross-examining various law-enforcement witnesses about civil lawsuits and old moving violations unrelated to this case.

## II. Background

### A. Factual Background

As the evidence at trial will show, James Gaines gave Bowen—who had previously been convicted of two felonies in New York State[1]—a gun because Bowen was having an argument with another person. In the early morning hours of July 1, 2017, Bowen and Gaines went to a street party on Coyle Place in Yonkers, New York; Bowen was

---

[1] In 2008, Bowen was convicted of assault in the second degree, a Class D Felony, in violation of N.Y, Penal Law § 120.05(2). In 1998, Bowen was convicted of criminal possession of a weapon in the third degree, a Class D Felony, in violation of N.Y. Penal Law § 265.02(3).

carrying the gun that Gaines had given to him. Unfortunately for Bowen, that party, and several events before and after it, were captured on surveillance video.

During the party, Bowen began arguing with a man (the "Victim"),[2] who pulled out a knife and began to stab Bowen; other partygoers surrounded Bowen as he fell to the ground with the Victim on top of him. Bowen pushed the Victim back with his leg, and reached down to his ankle. Bowen then fired a gun—presumably taken from his ankle—hitting the Victim, who lurched back as Bowen stood up and ran into the street. Bowen began gesturing towards the Victim, waving the gun in a threatening manner. Bowen then ran away, still holding the gun. Gaines stooped down to the ground where the Victim had been stabbing Bowen and picked something up.

Minutes later, Bowen went into the lobby of 26 Rollins Avenue in Yonkers, bleeding heavily and holding the gun. Gaines followed Bowen in and Bowen passed his gun to Gaines. Gaines and Bowen walked together to Apartment 3E, which Gaines entered while Bowen stood outside. A few minutes later, Gaines came out and the two men walked down the stairs together, where they were almost immediately met by officers with the Yonkers Police Department ("YPD"), who took Bowen to the hospital.

Hours later, YPD detectives went to Apartment 3E, where they found Gaines, his girlfriend,[3] and others. With the girlfriend's consent, YPD searched the apartment, including a bedroom where the girlfriend said her boyfriend "James" sometimes

---

[2] The Victim, in fact, began stabbing Bowen *before* Bowen shot the Victim.

[3] This is a different girlfriend than the one discussed later in this brief.

stayed with her. In the bedroom, the officers found mail addressed to Gaines, and a floral bag containing two partially loaded firearms—a .380-caliber pistol and a blood-stained .38-caliber revolver, as well as additional ammunition. As confirmed by DNA testing and analysis, the blood on the .38-caliber revolver was Bowen's. Neither firearm was manufactured in New York.

### B. Procedural Background

On August 12, 2019, a grand jury in this District returned Superseding Indictment S1 18 Cr. 205 (NSR), which charges Bowen in one count with being a felon in possession of a firearm—to wit, either the .380-caliber pistol or the .38-caliber revolver—and aiding and abetting the same, in violation of 18 U.S.C. §§ 922(g)(1) and 2.

On March 27, 2019, Gaines pleaded guilty to Count One of Indictment 18 Cr. 205 (NSR), which charged Gaines with being a felon in possession of a firearm—to wit, either the .380-caliber pistol or the .38-caliber revolver—and aiding and abetting the same, in violation of 18 U.S.C. §§ 922(g)(1) and 2. On July 26, 2019, this Court sentenced Gaines to 32 months' imprisonment, to be followed by a three-year term of supervised release, and imposed a $100 special assessment.

The Court has scheduled trial in this case to begin on December 14, 2020.

### III. The Court Should Allow The Government To Offer Certain Evidence At Trial

The Government respectfully asks this Court to issue pretrial rulings admitting two specific forms of evidence:

   (1) the Victim's statement that Bowen had just shot him; and

3

    (2)  Gaines's statement about giving a gun to Bowen before the shooting, and then hiding that gun after the shooting.

### A. The Victim's Statement At The Hospital About Bowen Shooting Him Is Admissible As An Excited Utterance

#### 1. Relevant Facts

Not long after the shooting, YPD officers responded to a hospital, where they met the Victim. The officers saw that the Victim was agitated, and had been shot in both his lower abdomen and lower left back. One of the officers asked the Victim if he had been in the vicinity of the fight on Coyle Place; the Victim responded, in substance and in part: "Yea, that n*gga shot me." The officers helped the Victim into the hospital, where the Victim said, in substance and in part: "Yo for real, I got shot! Thank god I had my knife on me, I chewed his face up. I ate his face up." A doctor later confirmed that the Victim had bullet wounds.

#### 2. Applicable Law

Under Rule 803(2), the normal bar on hearsay testimony does not apply to a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). Excited utterances are admissible because such statements are made "under circumstances that eliminate the possibility of fabrication, coaching, or confabulation, and … therefore the circumstances surrounding the making of the statement provide sufficient assurance that the statement is trustworthy." *Idaho v. Wright*, 497 U.S. 805, 820 (1990). In other words, "the excitement of the event limits the declarant's capacity to fabricate a statement and thereby offers some guarantee of its reliability." *United States v. Tocco*, 135

4

F.3d 116, 127 (2d Cir. 1998). An excited utterance "need not be contemporaneous with the startling event to be admissible" under Rule 803(2), and the "length of time between the event and the utterance is only one factor to be taken into account in determining whether the declarant was … under the stress of excitement" caused by the event. *United States v. Scarpa*, 913 F.2d 993, 1017 (2d Cir. 1990).

Excited utterances, moreover, do not implicate a defendant's right to confront his accusers. This is because "[s]tatements properly classified as excited utterances are an archetype of the off-hand, non-testimonial statements that do not implicate the Confrontation Clause." *Branham v. Lee*, No. 10 Civ. 3074 (NRB), 2011 WL 5979530, at *6 (S.D.N.Y. Nov. 29, 2011); *see also*, *e.g.*, *Bonds v. Keyser*, Nos. 16 Civ. 5908 (AMD), 18 Civ. 2794 (AMD), 2020 WL 1550575, at *8 (E.D.N.Y. Mar. 31, 2020) ("In any event, the contents of the 911 call and Ms. Rahman's testimony about Ms. Wilks' account of the robbery were 'properly admitted under the excited utterance exception of the hearsay rule,' and 'did not constitute a confrontation clause violation.'" (quoting *People v. Bonds*, 118 A.D.2d 717, 719 (2d Dep't 2014)).

### 3. Discussion

The Victim's statements that he had been shot and that he had repeatedly stabbed the man who shot him are classic excited utterances. Only minutes had passed between the shooting and the Victim's statements to law enforcement. The Victim was still agitated and suffering from two recent gunshot wounds, having, as they say, brought a knife to a gunfight. The Victim was still in such a state that law enforce-

5

ment officers had to help him get into the hospital. Moreover, the theoretical foundation for the excited utterance exception to hearsay rules—that such statements are made "under circumstances that eliminate the possibility of fabrication, coaching, or confabulation, and … therefore the circumstances surrounding the making of the statement provide sufficient assurance that the statement is trustworthy." *Wright*, 497 U.S. at 820—is amply demonstrated in this case, where, as part of his excited utterance, the Victim even admitted to stabbing the man who shot him: "Yo for real, I got shot! Thank god I had my knife on me, I chewed his face up. I ate his face up." Because the Victim's statements were plainly made under the stress of his excitement, they are admissible under Rule 803(2).

### B. Gaines's Statements About Supplying Bowen With A Gun And Hiding Firearms On Their Behalf Are Admissible As Statements Against Gaines's Penal Interest.

#### 1. Relevant Facts

Shortly after the shooting, Gaines called his girlfriend (the "Girlfriend") to say that he could not see her because he had been involved in a shooting. Gaines and his Girlfriend spoke, and Gaines told his Girlfriend, among other things:

- Before the shooting, a friend of Gaines came to Gaines's other girlfriend's apartment and asked for a gun because he was having an argument with another person.

- Gaines gave a gun to the friend and Gaines and his friend left the apartment with two guns.

- Gaines and his friend were involved in a shooting whereby the friend shot himself in the foot and also shot another person who was fighting with Gaines's friend.
- Gaines and his friend returned to Gaines's other girlfriend's apartment and left the guns inside the apartment.

The Government has contacted Gaines's attorney and asked him to determine whether Gaines has a Fifth Amendment right not to testify and, if he does, whether he will assert that right if called to testify.

### 2. Applicable Law

A statement is not hearsay if it "was made by the party in an individual or representative capacity." Fed. R. Evid. 801(d)(2)(A). A statement is also not hearsay if "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest … or to expose the declarant to civil or criminal liability; and is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability." Fed. R. Evid. 804(b)(3).

"Rule 804(b)(3) is founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." *Williamson v. United States*, 512 U.S. 594, 599 (1994). To satisfy Rule 804(b)(3), the proponent of the statement must show by only a preponderance of the evidence: "'(1) that the declarant is unavailable

7

as a witness, (2) that the statement is sufficiently reliable to warrant an inference that a reasonable man in [the declarant's] position would not have made the statement unless he believed it to be true, and (3) that corroborating circumstances clearly indicate the trustworthiness of the statement.'" *United States v. Wexler*, 522 F.3d 194, 202 (2d Cir. 2008) (*quoting United States v. Katsougrakis*, 715 F.2d 769, 775 (2d Cir. 1983)) (alteration in original).

In general, a statement is against penal interest if "a reasonable person in the declarant's shoes would perceive the statement as detrimental to his or her own penal interest." *United States v. Saget*, 377 F.3d 223, 231 (2d Cir. 2004). "Whether a challenged statement is sufficiently self-inculpatory can only be answered by viewing it in context." *United States v. Williams*, 506 F.3d 151, 155 (2d Cir. 2007). Although "non-self-inculpatory statements … made within a broader narrative that is generally self-inculpatory" are not admissible as statements against penal interest, *Williamson*, 512 U.S. at 600–01, a statement describing inculpatory acts committed by the declarant and a defendant are admissible in full as statements against the declarant's penal interest, especially where the context of the statement demonstrates that the declarant was not attempting to "minimize his own culpability, shift blame onto [the defendant], or curry favor with authorities." *Williams*, 506 F.3d at 155; *accord United States v. Wexler*, 522 F.3d at 203 (affirming admissibility of statements that implicated both declarant and defendant); *Saget*, 377 F.3d at 231 (affirming admissibility of taped conversations implicating both the declarant and the defendant in joint criminal activity).

### 3. Discussion

Gaines's statements to the Girlfriend are admissible as statements against Gaines's interest. First, this brief assumes that Gaines is "unavailable" because he will invoke his Fifth Amendment right against incrimination rather than testifying.[4] *See, e.g., United States v. Desena*, 260 F.3d 150, 158 (2d Cir. 2001) ("Richter invoked his Fifth Amendment right not to testify at Mihalitsianos' trial and thus was an unavailable witness under Fed. R. Evid. 804(a)(1).").[5]

Second, Gaines's statements were against his penal interest because they tended to "expose [Gaines] to civil or criminal liability." Fed. R. Evid. 804(b)(3). In particular: (1) Gaines was, as this Court knows, a felon at the time of the shooting, so his statements about lending a gun to Bowen and then taking the gun back, as well as about having another gun with him, implicated Gaines in violating 18 U.S.C. § 922(g), the charge to which Gaines ultimately pleaded guilty; (2) even had Gaines lawfully possessed the firearm, he admitted to violating N.Y. Penal Law § 265.10(7)—which criminalizes "disposing of"[6] a firearm without first notifying the state police in writing—

---

[4] If Gaines does not so invoke, this part of the motion *in limine* will be moot, as the Government can simply call Gaines to testify.

[5] Rule 804 sets forth the criteria for a declarant being "unavailable." Among others, a declarant is unavailable if he "is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies." Fed. R. Evid. 804(a)(1).

[6] "'Dispose of' means to dispose of, give, give away, lease, *loan*, keep for sale, offer, offer for sale, sell, transfer and otherwise dispose of." N.Y. Penal Law § 265.00(6) (emphasis added).

9

by lending a gun to Bowen; (3) by hiding guns knowing that at least one of them had just been used in a shooting, Gaines admitted to tampering with physical evidence, in violation of N.Y. Penal Law § 215.40(2); and (4) Gaines admitted to potential civil liability for aiding and abetting Bowen's assault on the Victim by providing Bowen with the gun he used to shoot the Victim. *See*, *e.g.*, *McKiernan v. Vaccaro*, 168 A.D.2d 827, 830 (2d Dep't 2019) (explaining that, "[t]o be liable for an assault under an aiding and abetting theory, a defendant must have committed some overt act, either by words or conduct, in furtherance of the assault," and that "actions preceding the assault [can] constitute[] an overt act in furtherance of the assault."). Accordingly, any part of his statements in which he discusses his possession of firearms, his providing firearms to Bowen, Bowen possessing that firearm after Gaines gave it to him (which further evidences Gaines's provision of the firearm to Gaines), the assault that Gaines aided and abetted from the standpoint of civil liability, Gaines's receipt of a gun from Bowen, and Gaines's hiding of his and Bowen's guns constitutes a statement against Gaines's penal interest.

Third, there is significant corroborating evidence for Gaines's statements. Among other things: (1) surveillance video shows Bowen and Gaines together by Gaines's other girlfriend's apartment building before the shooting; (2) surveillance video shows Bowen getting into a fight with the Victim and shooting the Victim; (3) the

10

Victim said that Bowen shot him; (4) Bowen admitted that he shot the Victim;[7] (5) surveillance video shows Bowen and Gaines returning to Gaines's other girlfriend's apartment building, where Bowen passes Gaines the gun and Gaines goes inside the apartment; and (6) law enforcement found two guns in the other girlfriend's room, one of which had Bowen's blood on it.

Accordingly, should Gaines render himself unavailable by exercising his Fifth Amendment right against self-incrimination, this Court should admit his statements to his Girlfriend pursuant to Rule 804(b)(3).

## IV. The Court Should Preclude Bowen From Arguing That The Jury Should Acquit In Order To Nullify The Law As Applied To Bowen

This is the type of case—one in which a defendant can argue that, even if he broke the law, things ultimately worked out because he might have been killed had he not broken the law[8]—in which a defendant may be tempted to ask the jury to acquit based not on the evidence or law, but rather in a bid for nullification. This he may not do. *See United States v. Thomas*, 116 F.3d 606, 616 (2d Cir. 1997) (holding that "trial

---

[7] After his arrest in this case, Bowen stated spontaneously, in substance and in part, "I fought for my life. I snatched the gun and it went off. Afterwards, I gave it to someone to give to the police" and "Would it have been better if I just waited and handed the gun to the police when they got there?"

[8] To be clear, even if there were a necessity defense available for Bowen during the time of the knife attack, he was still prohibited from possessing a firearm both before and after the knife attack. *See, e.g.*, *United States v. Miles*, 748 F.3d 485, 490 (2d Cir. 2014) (explaining that, to the extent there is an "innocent possession" defense based on necessity, such possession must be "'only for as long as necessary' to deal with a justifying necessity of some kind." (quoting *United States v. White*, 552 F.3d 240, 249 (2d Cir. 2009))).

11

courts have the duty to forestall or prevent [jury nullification]"); *see also United States v. Reese*, 933 F. Supp. 2d 579, 583 (S.D.N.Y. 2013) ("[T]he Court will not permit [defendant] to advance arguments aimed at jury nullification."); *see also United States v. Regan*, 103 F.3d 1072 (2d Cir. 1997); *United States v. Rosado*, 728 F.2d 89 (2d Cir. 1984); *United States v. Demosthene*, 334 F. Supp. 378, 380 (S.D.N.Y. 2004). Accordingly, in an abundance of caution, the Court should remind Bowen that appeals to jury nullification will not be tolerated.

## V. The Court Should Preclude Bowen From Engaging In Certain Lines Of Cross-Examination

Gaines's Girlfriend has been convicted of a number of misdemeanor offenses, none of which bear on an individual's credibility. Additionally, various law enforcement officers who are potential witnesses have been sued for a variety of reasons, are the subjects of unsubstantiated complaints, or, in two cases, were convicted of moving violations approximately two decades ago. The Court should preclude Bowen from cross-examining these witnesses on any of these subjects.

### A. Relevant Facts

#### 1. Gaines's Girlfriend

Gaines's Girlfriend was not involved in the charged crime, nor is she a percipient witness. However, Gaines made certain admissions to her and, if he exercises his Fifth Amendment right against self-incrimination and declines to testify, Gaines's Girlfriend will testify about those admissions.

Gaines's Girlfriend has previously been arrested for certain crimes, and has been convicted of, among other things: (1) petit larceny (a misdemeanor) in about 2017;

(2) prostitution (a misdemeanor) in about 2005; (3) criminal possession of a controlled substance in the seventh degree (a misdemeanor) in about 2004; (4) attempted assault in the third degree (a misdemeanor) in about 2002; (5) criminal possession of a controlled substance in the seventh degree in about 2002; and (6) attempted criminal possession of a weapon (a misdemeanor) in about 2000.

### 2. Law Enforcement Witnesses

The Government is aware of certain civil lawsuits filed against some of the law enforcement officers the Government may call at trial.[9] Each of these suits—none of which relate to this case—are either: (1) pending; (2) was dismissed as a matter of law; or (3) was settled without a finding of liability on the part of the relevant law enforcement officer. Additionally, certain civilian complaints—none of which relate to this case—were filed against some of the officers, all of which were found to be unsubstantiated.

Two potential law enforcement officers sustained convictions for moving violations approximately 20 years ago: one for driving with a revoked license and the other for driving under the influence.

### B. Applicable Law

District courts have "broad discretion in controlling the scope of cross-examination." *United States v. Caracappa*, 614 F.3d 30, 42 (2d Cir. 2010) (internal quotation

---

[9] The Government has disclosed lawsuits of which it is aware to Bowen; if it learns of additional lawsuits, it will promptly alert Bowen.

13

marks omitted); *see also* Fed. R. Evid. 611(a) (noting that courts "shall exercise reasonable control" over cross-examination to "avoid needless consumption of time" and to "protect witnesses from harassment or undue embarrassment") and 611(b) (limiting scope of cross-examination of witnesses to subject matter of direct examination and matters affecting credibility of witnesses).

Additionally, the Court may restrict cross-examination about prior conduct by a witness if it finds that the conduct is not probative of truthfulness. *See* Fed. R. Evid. 608(a) & (b); *see also* Fed. R. Evid. 608(a) advisory committee's note ("In accordance with the bulk of judicial authority, the inquiry is strictly limited to character for veracity, rather than allowing evidence as to character generally."). Further, even if such prior conduct is relevant, the Court may still exclude cross-examination of such conduct if it finds that the "probative value [of the testimony] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; *accord United States v. Devery*, 935 F. Supp. 393, 407-08 (S.D.N.Y. 1996) ("Such [prior] acts are only admissible insofar as they bear on a witness's propensity for truthfulness or untruthfulness, and, even if the prior act does concern the witness's character for truthfulness under Rule 608(b), its probative value must not be substantially outweighed by its unfairly prejudicial effect under Rule 403.").

Under those principles, courts commonly preclude cross-examination of law enforcement witnesses about allegations in civil lawsuits that are wholly unrelated

14

to the case, do not concern the officers' character for truthfulness, and did not result in adverse determinations about the officers. *Saldarriaga v. United States*, No. 99 Civ. 4487 (WK), 2002 WL 449651, at *4 (S.D.N.Y. Mar. 21, 2002); *United States v. Akefe*, 568 F. App'x 1 (2d Cir. 2014) (limitation on cross-examination on allegations against law enforcement agent was appropriate given that the allegations were unsubstantiated and wholly unrelated to the case).

"Specific instances of the conduct of a witness … may …, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness[.]" Fed. R. Evid. 608(b). As to prior convictions specifically, "[f]or the purpose of attacking the character for truthfulness of a witness … evidence that a witness other than an accused has been convicted of a [felony] shall be admitted, subject to Rule 403," Fed. R. Evid. 609(a)(1), except "if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect," Fed. R. Evid. 609(b).

### C. Discussion

Gaines's Girlfriend's prior convictions, as well as the decades-old moving violation convictions of two law enforcement officers, were all misdemeanors or infractions, and did not involve a dishonest act or false statement. As such, they fail every test of

15

Rule 609 and should not be the subject of cross-examination. *See also, e.g.*, *United States v. Salameh*, 152 F.3d 88, 131–32 (2d Cir. 1988) ("Butler's misdemeanor arrests and convictions were more than fifteen years old, and they were not admissible under Rule 608(b) because they did not involve dishonesty or a false statement, and so were not 'probative of truthfulness or untruthfulness.'"); *United States v. Estrada*, 430 F.3d 606, 616 n. 3 (2d Cir.2005) ("In defining 'dishonesty or false statement' for purposes of Rule 609(a)(2), the Conference Report on the Federal Rules emphasized that it was referring to convictions 'peculiarly probative of credibility,' such as those for 'perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on [a witness's] propensity to testify truthfully.'" (quoting H.R. Conf. Rep. No. 93-1597, 2d Sess., at 9 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7098, 7103)).

The Court should also preclude cross-examination of any law enforcement witness about any lawsuits or civilian complaints, because the underlying allegations are wholly unrelated to their testimony in this case, do not concern the officers' character for truthfulness, and did not result in adverse determinations about the officers. *Saldarriaga*, 2002 WL 449651, at *4; *Akefe*, 568 F. App'x 1.

## VI. Conclusion

For the foregoing reasons, the Court should grant the Government's motions *in limine*.

Dated:    White Plains, New York
            October 30, 2020

                                      Respectfully submitted,

                                      AUDREY STRAUSS
                                      Acting United States Attorney for the
                                      Southern District of New York

                    By:    \_\_\_\_/s/_____
                                      Samuel L. Raymond
                                      Benjamin A. Gianforti
                                      Michael D. Maimin
                                      Assistant United States Attorneys
                                      (914) 993-1900