UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
UNITED STATES OF AMERICA **18 CR 205 (NSR)**

-against-

JAMES BOWEN,

Defendant.
----------------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTION SEEKING THE PRECLUSION OF A CERTAIN DEFENSES AND IN OPPOSITION TO THE GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT HEARSAY STATEMENTS AND PROHIBIT CERTAIN LINES OF CROSS-EXAMINATION**

Michael K. Burke, Esq. (MB 7554)
HODGES WALSH & BURKE, LLP
*Attorneys for Defendant Bowen*
55 Church Street, Suite 211
White Plains, NY 10601
(914) 385-6000
(914) 385-6060 (fax)

Defendant JAMES BOWEN ("Bowen") submits this Memorandum of Law in Opposition to the Government's Motion to Preclude the defendant's anticipated Necessity/Justification/Temporary Lawful Possession and in Opposition to the Government's Motion *in Limine* to admit unreliable hearsay statements and preclude certain lines of cross examination.

## I. THE GOVERNMENT'S MOTION FOR THE PRECLUSION OF THE DEFENSE OF JUSITIFCATION /NECESSITY SHOULD BE DENIED

At the time of trial, the defendant Bowen will request a necessity/justification/(self defense) and temporary lawful possession jury instructions. The video surveillance evidence will show James Bowen was the victim of an unprovoked brutal stabbing/slashing in the middle of the street. In self-defense and out necessity he came into possession of a firearm and shot the assailant who was stabbing him. It has been held that in certain situations such as present here, a defendant can raise the defense of justification against a charge of possession of a firearm even when the person had previously been convicted of a felony. The facts in this case establish that James Bowen had lifesaving justification to possess and use a firearm and that he did not maintain possession of it any longer than necessary.

## I. BACKGROUND

On July 2, 2017, James Bowen was arrested by the Yonkers Police Department for criminal possession of a firearm in the second degree, and assault in the second degree after Mr. Bowen had been brutally stabbed with a knife in the stomach, eye and forearm. For whatever unstated reason the state charges were referred to federal law enforcement officials.

On the early morning of July 1, 2017, Bowen went to a street party on Coyle Place in Yonkers, New York. The video evidence will show that while in the middle of the street an assailant started to argue with Bowen and then pulled out a knife and began to repeatedly stab him across the face, across the chest, arms and all around his body. Bowen was back pedaling and fell back into a parked car as the assailant continued to stab and cut him. Bowen then retreated as he continued to be brutally and violently sliced and stabbed he fell back into an alleyway where he was surrounded by the assailant and associates of the assailants. Fighting for his life, Bowen came in to possession of a gun and while on the ground shot at the assailant in self-defense. At the time of trial, the evidence will show that Mr. Bowen was in fear for his life as the assailant had brutally stabbed him in the chest, stomach, eye and forearms, and that if he did not use the firearm, he would have been killed.

It has been held that in order to show justification for the defense of possession of a firearm, the defendant must establish the following four elements: *United States v. Gant*, 691 F.2d 1159 (5th Cir. 1982):

1. That defendant was under an unlawful and "present, imminent, and impending [threat] of such a nature as to induce a well-grounded apprehension of death or serious bodily injury." *United States v. Bailey*, 585 F.2d 1087, 1110 (D.C. Cir. 1978) (Wilkey, J. dissenting), reversal, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980).

2. That defendant had not "recklessly or negligently placed himself in a situation in which it was probably that he would be 'forced to choose the criminal conduct']." *United States v. Agard*, 605 F.2d 665, 667 (2d Cir. 1979);

3. That defendant had no "reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm." *United States v. Bailey*, 444 U.S. 394, 410, 100 S.Ct. 624, 635, 62

L.Ed.2d 575 (1980); and

4. "that a direct causal relationship may be reasonably anticipated between the {criminal} action taken and the avoidance of the 'threatened' harm." *United States v. Cassidy*, 616 F.2d 101, 102 (2d Cir. 1979).

In *Gant*, the Court emphasized that, "the keystone of the analysis is that the defendant must have no alternative – either before or during the event to avoid violating the law."

Applying the law to the case at hand, it is undisputed that the assailant was brutally stabbing Bowen slicing him in the stomach, eye and forearm and when Bowen fell to the ground in an alley the assailant and the assailant's friends surrounded Bowen while on the ground and the assailant jumped on top of Bowen and continued to stab him. Under the circumstances, it is clear, that under the *Gant* rational, Bowen has satisfied the first prong in showing that he was justified in using a firearm. Clearly, Bowen was in great danger of losing his life as the alleged victim continued to stab him and, if he did not stop him. If Bowen had not come into possession of the handgun, he most likely either have likely died or suffered a greater and more serious bodily injury than he already suffered.

Applying the second prong of *Gant*, there is no evidence that Bowen acted recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose criminal conduct. Applying law to the facts of the case herein, Bowen had no reason to believe that the alleged victim would pull a knife on him when he started arguing with him. While Bowen was talking to the alleged victim, he pulled a knife and immediately starting stabbing Bowen without warning.

As to the third prong, Bowen had no reasonable alternative other than to use the firearm to save his life. It is undisputed that the alleged victim was on top of Bowen

stabbing him. If he had done nothing, Bowen almost certainly would have been killed.

Finally, applying the fourth prong in *Gant*, it is clear that it could have been reasonably anticipated that Bowen would use the gun that became available to him to save his life. At the time that Bowen obtained the gun, the alleged victim had already brutally stabbed Bowen in the stomach, chest, eye and forearm and, therefore, there is a direct causal relationship between Bowen's use of the firearm to stop the alleged victim from killing him. Bowen did not maintain possession of the weapon any longer than necessary.

The Courts have recognized "reasonable justification" as a defense to a felon in possession of a firearm charge. See, *U.S. v. Singleton*, 902 F.2d 471, 473 (6th Cir. 1990); *U.S. v. Perrin,* 45 F.3d 869, 879 (4th Cir. 1995). As discussed above, Bowen will establish at trial that he is should be acquitted of the crimes charged in this case against him based upon duress or necessity as it relates to the use of a gun to save his life. In addition to meeting the 4-prong test, in *Gant*, Bowen can shows based on the facts, that he did not maintain possession of the firearm at issue any longer than necessary. The facts at trial will establish that Bowen came into possession of a gun while he was being stabbed by the alleged victim. He used the gun for the sole purpose of saving his life as he was being stabbed by the assailant. He used the gun and had it in his possession for as long as necessary to save his life. After using the firearm to defend himself against the alleged victim, he ran away bleeding heavily uncertain whether the assailant or his friends were going to further attack him again with the knife or any other deadly weapons.

Under these circumstances, Bowen had a justified reason for using the firearm that came into his possession as he was being stabbed by the alleged victim. As acknowledged in the Government's moving papers, Bowen stated after his arrest that he was "fighting for

his life." Therefore, under these circumstances, Bowen is entitled to argue that the jury should acquit him on the basis that his use of the firearm was under duress and justified.

## II. Gaines Hearsay Statements to His Ex-Girlfriend Should be Precluded as Unreliable Hearsay Not Within an Exception

Defendant James Bowen further submits this Memorandum of Law in Opposition to the Government's Motion *in Limine* to admit the unreliable hearsay statements of James Gaines as statements against penal interest.

It is the Government's position that the statements of James Gaines are admissible on the basis that they were made against his penal interests, and pursuant to Rule 804(b)(3). Importantly, James Gaines through his counsel vehemently denied that he made the alleged statements. Gaines also is in Bureau of Prisons custody and is not unavailable as the government suggests. Based on the fact the declarant is available the government's motion should be denied as moot. Lastly, there are serious issues regarding the credibility of the witness' testimony as it relates to what James Gaines allegedly told her.

At the time of the trial of this case, the Government intends to put the former girlfriend of James Gaines on the witness stand. His former girlfriend did not report the statements that government now intends to introduce until late January 2019, nearly a year and a half after they were purportedly made. As was established at Gaines bail revocation hearing, Gaines former girlfriend sent text messages to Gaines after he started a relationship with another woman evincing her animus toward Mr. Gaines and threatening his now girlfriend. These text messages were introduced as defense exhibits at Gaines bail revocation hearing on February 5, 2019. Gaines ex-girlfriend said in the January 26th, 2019 text: "I'm just getting started with you. I'ma show you how it feels to hurt and play with

someone's feelings and heart....you played [former girlfriend's name] for the last time. Enjoy your bitch." (Ex. A p. 38) During that same text chain Gaines former girlfriend said "you like to play too many games" she then called Gaines in the text a nigga and said "you have no respect at all, so now I don't either"..."you like to play, so my time play play." (Ex. A pp. 37-38) She then went on to text Gaines a threat to his new girlfriend saying "I better never see that bitch on the streets. I'ma carve your initials in that bitch face so she can always remember you." (Ex. A p. 44). This witness only revealed these purported statements against penal interest to the government after these texts were sent in January of 2019. There are serious issues as to the Government's witness's motives and she is not credible in light of the circumstances. It is well settled that for an out of court statement to come into evidence at trial, it must not only come in by one of the exceptions of the hearsay rule, but it must also have a "indicia of reliability." Here, there is none.

In *United States v. Ojudun*, 915 F.3d 875 (2d Cir. 2019), the Court of Appeals found that the District Court had improperly admitted the confession of Ojudun's co-defendant under the statement against interests hearsay exception. The Court held in *Ojudun* that "when determining if a statement comes in as a statement against interest, courts must scrutinize each particular statement rather than treat an entire confession as a single statement." See, *Williamson v. United States*, 512 U.S. 594, 599 (1994). The Court pointed out in *Ojudun* that the rationale behind the exception is that people – even those who are dishonest – do not typically make incriminating statements unless they believe them to be true; however, when incriminating statements are combined with those shifting blame on others, the exceptions rationale only applies to the loose parts of the statement that are inculpatory. The shifting blame to Bowen's alleged possession is unreliable hearsay and

should not be admitted.

Applying *Ojudun* to the case at hand, the Government is requesting that out of court hearsay testimony be allowed in on 4 different issues as alleged in the Government's papers on the bottom of page 6 to the top of page 7. The Court must first consider whether Gaines' made statements and that are actually against his penal interests. The Government's first contention is that the witness will testify that Gaines came to her apartment and asked for a gun because he was having an argument with another person. That statement, even if true, does not implicate or necessarily go against Gaines' penal interests. The Government is also claiming that Gaines'ex-girlfriend will testify that Gaines and his friend were involved in a shooting whereby the friend shot himself in the foot and also shot another person who was fighting with Gaines' friend. Likewise, that testimony even if true, which they are not, does not mean that the statement was against Gaines' penal interests. I have requested that the government produced these statements and reports to fully anaylze them and present them to the Court. The government refused to disclose this witness reports at this time and represented that I would get them as part of its 3500 material. These reports should be fully disclosed now so the defense and court can adequately scrutinize them.

As the court held in the *Ojudun* case, the statement against interests exception must be carefully applied to avoid the admission of statements of "highly questionable credibility." Here in the case at hand, we have the situation where the Government's witness is the former girlfriend of James Gaines, and it is certainly questionable what her motives are in light of the fact that James Gaines left her to start dating another woman.

The cases cited by the Government, *Williamson v. Untied States*, 512 U.S. 594, 599 (1994); *United States .v. Wexler*, 522 F.3d 194 (2d Cir. 2008); *United States v. Saget*, 377

F.3d 223 (2d Cir. 2004), and *United States v. Williams*, 506 F.3d 151 (2d Cir. 2007) do not deal with situations where there is arguably an ex-girlfriend who carries a grudge against the person who allegedly made the statement against his penal interests. In addition, the cases cited by the Government deal with situations where the witness is making an out of court statement regarding the person who allegedly made the statement against his own penal interests for the sake of trying to convict that person. In this case, if the Government's witness, if allowed to testify, would be testifying about statements that James Gaines allegedly made to her which are supposedly against his interests. James Gaines is not the defendant in this case, but rather, it is James Bowen. Therefore, there is a serious question as to how reliable the testimony would be.

In *United States v. Saget*, 377 F.3d 223 (2d Cir. 2004), the court held that a determination needs to be made by the court to determine if there is an "insufficient indicia of reliability" as to the witness' testimony. In addition, the court in *Saget* held that there has to be an "adequate guarantee of trustworthiness" of the testimony being made by the witness. Applying *Saget* to the case at hand, there are certainly legitimate concerns as to whether the Government's witness can provide trustworthy and reliable interests. If there is any indication that she cannot, the court should reject the testimony.

There are many other cases that deal with the admission of statements against a person's penal interests and that specifically deal with the issue of the trustworthiness of the testimony. The following cases all deal with that issue: *United States v. Lunpkin*, 192 F.3d 280 (2d Cir. 1999); *United States v. DeVillio*, 983 F.2d 1185 (2d Cir. 2011); *United States v. Bahadar*, 954 F.2d 821 (2d Cir. 1992); *United States v. McKee*, 462 F.2d 275 (2d Cir. 1972). All of these cases stand for the proposition that only "trustworthy and reliable"

out of court statements against a person's penal interest should be considered by the court, and should be rejected if there is any indication it is not. Here, a the year and a half delay in disclosure by a scorned ex-lover with six prior convictions and who threatened to "play" with Gaines and threatened to carve his initials in the face of his new girlfriend are unreliable hearsay not within an exception and should not be admitted in evidence.

## III. The Government's Motion to Preclude Bowen from Engaging in Certain Lines of Cross-Examination Should be Denied

Gaines ex-girlfriend has six prior criminal convictions. If she is permitted to testify, the Defendant should be permitted to cross exam about all of her prior convictions so that the jury can properly assess her credibility. As to the 2017 petit larceny charge, that is a theft crime and bears on the witnesses truthfulness. Counsel should be permitted to cross exam her regarding that conviction.

"[T]heft crimes, and other crimes involving stealth ... bear on a witness's propensity to testify truthfully." *United States v. Estrada,* 430 F.3d 606, 621 (2d Cir.2005); *see Williams v. McCarthy,* 05 Civ. 10230, 2007 WL 3125314, at *2 (S.D.N.Y. Oct. 25, 2007); *Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.,* 01 Civ. 3796, 2005 WL 1026515, at *8–9 (S.D.N.Y. May 2, 2005). Petit larceny is a theft crime, and therefore the Court should find that evidence of this crime bears upon the witness's veracity. *See Estrada,* 430 F.3d at 621.

As to the five other crimes Defendant should be able to cross examine this witness about her untruthful prior sworn testimony at the Gaines bail hearing regarding her

criminal convictions. During her direct examination the Assistant United States Attorney asked her:

Q: So, in 2017, you were arrested and convicted of a crime?

A: Yes.

Q: And before that, had you ever been arrested and convicted of a crime?

A: Yes 9/'14, yes.

Q: So, years ago you had been arrested and convicted of a crime?

A: Yes. (Ex. A pp. 4-5)

The witness's answers about only two other convictions in "9/'14" is not true. She had in fact been convicted of five prior crimes none of which were in 2009 or 2014:

a. 2005 Prostitution
b. 2004 Criminal Possession of a Controlled Substance in the Seventh Degree
c. 2002 Attempted Assault in the Third Degree
d. 2002 Criminal Possession of a Controlled Substance in the Seventh Degree
e. 2000 Attempted Criminal Possession of a Weapon. (see Govt. Brief p.13)

The defendant counsel should also be permitted to cross examine this witness about her truthfulness in her job application with Child Protective Services where she works. This witness almost certainly did not answer truthfully in the job application process about her criminal history of theft, drugs, weapons, assault and prostitution before securing a job to work with children.

## IV. Defendant Should be Permitted to Cross Examination of Law Enforcement Witnesses regarding certain areas that the Government Seeks to Preclude.

The Government wishes to preclude counsel from cross-examining law enforcement witnesses about certain prior lawsuits or vehicle and traffic infractions. Counsel does not intend to cross examine these witnesses about civil lawsuit that were dismissed or are pending or about vehicle and traffic infractions but does intend to seek the ability to cross examine the officers about his DWI conviction and driving with a suspended license.

Defendant also intends to cross Det. Drain about his prior adverse credibility determination by the Westchester District Attorney where the Assistant District Attorney "was deeply troubled by the testimony of Police Officer Hughes, Egan, Drain, & Quirk" at a suppression hearing regarding their warrantless search of an apartment after a traffic stop. (Ex. B attached)

Suprisingly, the District Attorney's office and the court found that the drug dealer defendant and his girlfriend's testimony about the events regarding the warrantless search was credible and Det. Drain and the other officers' testimony was not.*Id* Likely based the incredible testimony of Det. Drain and the other Yonkers officers, the District Attorney was forced to reduce the charges and offered a plea to a lesser included offense because they were unable to proceed to trial. If Det. Drain is called to testified the defendant should be permitted to cross examine him about this adverse credibility determination.

## CONCLUSION

For the reasons set forth herein, the Government's Motion for the Preclusion of a Certain Defense, lines of cross examination and its Motion *in Limine* to Admit Hearsay Statements should be denied in their entirety.

Dated: White Plains, New York
November 6, 2020

/s/ Michael K. Burke
Michael K. Burke, Esq. (MKB 7554)
Hodges, Walsh & Burke, LLP
*Attorney for Defendant James Bowen*
55 Church St., Suite 211
White Plains, New York 10601
(914) 385-6030