

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

May 9, 2021

**BY EMAIL & ECF**

The Honorable Nelson S. Román
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

   **Re:** ***United States v. James Bowen*,**
      **18 Cr. 205 (NSR)**

Dear Judge Román:

 The Government respectfully submits this supplemental motion *in limine* to introduce in evidence a certified transcript of Bowen's September 28, 2017 bail hearing before United States Magistrate Judge Paul E. Davison (the "Bail Hearing Transcript"). The Bail Hearing Transcript will be marked as Government Exhibit 601, and is enclosed herein for reference. The Bail Hearing Transcript was produced to the defendant on April 5, 2018, as part of an individual production that also included the joint discovery that was produced to both defendants on the same day. *See* Bowen_000004-000029.[1] As set forth below, the statements made by the defendant's prior counsel at the Bail Hearing, during which she admitted—after conferring with the defendant—that the defendant possessed a firearm and shot it on the night in question, directly contradict statements made by the defendant's current counsel at trial and are admissible as statements of a party opponent.

**I. Applicable Law**

 A statement is not hearsay if it is an opposing party's statement "made by a person whom the party authorized to make a statement on the subject" or "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(C) & (D). The Second Circuit has specifically approved of the admission at trial of defense counsel's factual representations in a bail

---

[1] The Bail Hearing Transcript (along with the Government's previous individual productions) was restamped and re-produced in November 2020 as JB_Individual_000018-000043, at Mr. Burke's request.

Hon. Nelson S. Román
May 9, 2021
Page 2 of 7

application. In *United States v. Amato*, 356 F.3d 216 (2d Cir. 2004), a defense lawyer submitted a letter to the district court in support of a bail application that made certain factual representations about the defendant's conduct. *Id.* at 218–19. Those factual representations were later contradicted by other evidence. *Id.* The Second Circuit held that the defense lawyer's letter, which "affirmatively put forth defendant's version of the facts," was appropriately admitted at trial against the defendant under Rule 801(d)(2). *Id.* at 220.

Additionally, "[a] copy of an official record—or a copy of a document that was recorded or filed in a public office as authorized by law—if the copy is certified as correct by: (A) the custodian or another person authorized to make the certification; or (B) a certificate that complies with Rule 902(1), (2), or (3), a federal statute, or a rule prescribed by the Supreme Court" is self-authenticating. Fed. R. Evid. 902(4). Moreover, "[t]he transcript in any case certified by the reporter or other individual designated to produce the record shall be deemed *prima facie* a correct statement of the testimony taken and proceedings had." 28 U.S.C. § 753(b). Accordingly, court transcripts, certified by court reporters, are public records subject to self-authentication—*i.e.*, they can be offered and admitted without calling a witness—and the burden rests on the defendant to rebut the presumption that the transcript is not a "correct statement." *United States v. Lumumba*, 794 F.2d 806, 815 (2d Cir. 1986); *see also Ball v. A.O. Smith Corp.*, 451 F.3d 66, 71 (2d Cir. 2006).

## II.   Discussion

As the Court knows, Bowen was originally represented in this matter by Susanne Brody of the Federal Defenders of New York. Ms. Brody represented the defendant during his September 28, 2017 bail hearing before Judge Davison. During the course of that hearing, after consulting with the defendant, Ms. Brody stated, among other things, the following about the incident on or about July 1, 2017:

> Ms. Brody: … So somehow, there's a gun, he shoots the gun, and gets arrested by Yonkers, goes to the hospital.
>
> The Court: Your client shoots the gun?
>
> Ms. Brody: *My client does shoot the gun. That's not in dispute. We're not going to dispute that at trial.*
>
> * * *
>
> Ms. Brody: … Additionally, my client says that when he was handed this gun, he was on the ground, his foot was in the air, and when the gun went off, it actually grazed his foot. The gun wasn't in his pocket and went off. And if it went off in his foot –

Hon. Nelson S. Román
May 9, 2021
Page 3 of 7

>    The Court: So he did shoot himself.
>
>    Ms. Brody: Up in the foot. *He did shoot himself in the foot, yes, he did…*

(Bail Hearing Transcript at 12, 18) (emphasis added).

This was not a position that Bowen quickly reconsidered; to the contrary, as recently as December 29, 2020, when Bowen submitted his proposed *voir dire* questions, Bowen has consistently argued that he *did* possess a firearm the morning of the incident, he shot the firearm, and, in doing so, shot himself and the man with whom he was fighting, but that his possession was justified by self-defense. (*See, e.g.,* Docket Entries 82 at 1 ("At the time of trial, the defendant Bowen will request a necessity/justification (self-defense) and temporary lawful possession jury instructions. The video surveillance evidence will show James Bowen was the victim of an unprovoked brutal stabbing/slashing in the middle of the street. In self-defense and out [of] necessity he came into possession of a firearm and shot the assailant who was stabbing him."), 3 ("Fighting for his life, Bowen came in to possession of a gun and while on the ground shot at the assailant in self-defense."), 4 ("If Bowen had not come into possession of the handgun, he most likely [would] either have likely died or suffered a greater and more serious bodily injury than he already suffered … Bowen had no reasonable alternative other than to use the firearm to save his life."), and 5 ("[I]t is clear that it could have been reasonably anticipated that Bowen would use the gun that became available to him to save his life… [T]here is a direct causal relationship between Bowen's use of the firearm to stop the alleged victim from killing him. Bowen did not maintain possession of the weapon any longer than necessary … After using the firearm to defense himself against the alleged victim, he ran away bleeding uncertain whether the assailant or his friend were going to further attack him again with the knife or any other deadly weapons."); 91 at 1–7 (proposing jury instructions on, *inter alia,* "innocent possession of a firearm," "duress (legal excuse)," "necessity (legal excuse)," "justification (legal excuse)," "firearms—unlawful possession—defense of justification," "temporary and lawful possession," and "duress—explained"); and 92 at 2 ("Mr. Bowen alleges that he temporarily possessed the weapon to defend[] himself from the violent attack[] and was legally justified in his temporary possession to defend himself from this deadly attack.").

In spite of consistently arguing for years that he possessed a gun, but only fleetingly in self-defense, Mr. Burke's opening statement on May 5, 2021 was premised almost entirely on the theory that Bowen *did not* possess or shoot a gun, or shoot himself in the foot, on or about July 1, 2017: [2]

- "And again, ladies and gentlemen, take a look, and you can stop the video as

---

[2] "Tr." refers to the transcript of the trial in this case.

- you watch this, as he is getting stabbed and stumbling back into the street, never once is he trying to reach into his pocket or reach down to his leg where the government claims he had a gun *because it didn't happen* … [W]atch that video because if he truly had the gun like the government wants to try to believe here, he is going for it. He is getting cut across the face, getting cut across the body, *but the video doesn't show it*." (Tr. 34–35) (emphasis added).

- "During this scrum and pileup, apparently a gunshot goes off, striking my client in the leg and Pilgrim in the side." (Tr. 35).

- "While out in the street, you will also see an alleyway in the video where that chain link fence was, where the pile-on and the assault and the gunshot went off. And I'm going to direct your attention to that because you will see after my client's out in the street bleeding, an individual by the name of James Gaines walked over to the change link fence, bent down, picked up an L-shaped black object and slide it in his pocket." (Tr. 36).

- "*[T]he only thing* that the police recover from my client is his black bloody cellphone." (Tr. 36) (emphasis added).

- "A black .38-caliber revolver is recovered *from James Gaines*, the man who bent down and picked it up by the chain link fence, his girlfriend at the time's apartment." (Tr. 37) (emphasis added).

- "James Bowen's hands were tested by the Yonkers Police Department where they did the adhesive tabs on both of his hands to try to find gunshot residue; sent to the Westchester County lab where a specialist and an examiner who's been doing it for decades, Maurice Woodbyne, examined the gunshot or the adhesive tabs for gunshot residue. *They found none*." (Tr. 38) (emphasis added).

- "But you will hear more about the forensics. You will hear that the gun, the .38-caliber and the ammunition were sent for fingerprint analysis. *No fingerprints of my client found on the gun or the ammunition*." (Tr. 38) (emphasis added).

- "[T]his is really, ladies and gentlemen, a case about *absence of evidence* is what they have. *No gunshot residue on his hands, just on his ankle in the area where he was shot. No fingerprints on the gun.* A blurry video showing him being stabbed and bleeding *carrying a black object in his hand after being stabbed, but the government wants you to believe there's a gun.*" (Tr. 39) (emphasis added).

- [A] gun goes off in a crowd while they are on top of him." (Tr. 39).

Hon. Nelson S. Román
May 9, 2021
Page 5 of 7

In short, despite representations at a bail hearing and in submissions to this Court that he did not plan on contesting his possession of the firearm—relying instead on a justification defense—Bowen has changed his position and now denies even fleeting possession of the firearm.[3]

To be clear, Bowen has every right to change his defense, to put on a different defense than that which he previously proffered, or, if he likes, not to put on a defense at all, simply leaving the Government to meet its burden of proof. However, this background explains why the Government did not initially think it necessary to offer evidence of Bowen's admissions through his prior counsel—his prior counsel's factual admissions at the bail hearing regarding his possession of the weapon—but now seeks to admit that selfsame evidence; in other words, why the Government did not flag this earlier.

Here, the Government should be permitted to offer portions of the transcript of the bail hearing in which Bowen—through counsel—admitted that he shot the gun and shot himself in the foot, specifically, the portions of the transcript quoted above. The statements are non-hearsay, admissible as statements of the agent of an opposing party. Fed. R. Evid. 801(d)(2)(C) & (D); *see also*, *Amato*, 356 F.3d at 218–20. And because the Government will obtain a certified copy of that transcript, and the transcript is therefore self-authenticating, the Government should be permitted to do so without calling the court reporter who transcribed the bail argument. Fed. R. Evid. 902(4).

The United States Court of Appeals for the Third Circuit was presented with a similar situation, and decided—relying explicitly on the Second Circuit's decision in *Amato*—that admission of such a bail transcript was wholly appropriate. *See United States v. Butler*, 496 F. App'x 158 (3d Cir. 2012) There, the defendant was convicted of one count of willfully interfering with a person operating an aircraft with intent to

---

[3] At one point, after referring passively to the shooting, so that it would not put the gun in Bowen's hands—"The gun went off striking James Bowen in the leg and the knife-wielding assailant, Pilgrim, in his side" (Tr. 39), Mr. Burke referred to the concept of self-defense:

> Under these dire circumstances, James Bowen did nothing more than what a reasonable person would have done. He fought for his life. He was faced with an armed assailant stabbing him. He tried to defend himself. He was not able to escape the pileup. Had he not been able to escape that pileup, he likely would have been dead.

(Tr. 39). Even in providing a justification, Mr. Burke did not admit that his client ever possessed a firearm in the first place.

Hon. Nelson S. Román
May 9, 2021
Page 6 of 7

endanger the safety of any person or with reckless disregard for the safety of human life, in violation of 18 U.S.C. § 32(a)(5), and one count of using a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c). *Id.* at 159. The charges were based on an incident in which the defendant fired several gunshots while being pursued by police officers and a low-flying police helicopter. *Id.* "[D]uring a detention hearing before the Eastern District of Pennsylvania on June 15, 2010, [the defendant's original counsel] represented to the Magistrate Judge on the record that Butler had fired the pistol but that he had not fired it at the police. The court subsequently granted [the defendant's original counsel] leave to withdraw as [the defendant's] counsel, and [the defendant's counsel] was represented by different counsel at trial." *Id.* Prior to trial, the Government moved *in limine* for an order permitting the introduction of the defendant's original counsel's statements at the bail hearing "in the event that [the defendant] presented a defense inconsistent with those statements." The District Court ruled in favor of the Government. *Id.* Ultimately, however, the defendant did not put on a defense inconsistent with his original counsel's statements and thus the statements were never introduced. *Id.* On appeal, the Third Circuit, citing *Amato*, "conclude[ed] that the District Court did not abuse its discretion in ruling that previous statements by counsel, which had been made on the record in the course of pretrial proceedings in the present case, were admissible under § 801(d)(2)(D)." *Id.* at 160–61.

In light of the facts that: (1) Ms. Brody made her statements about her client possessing and shooting a gun to the Court under oath on behalf of her client while standing next to her client; (2) Ms. Brody understood the import of those statements, even noting that "[w]e're not going to dispute that at trial"; (3) Mr. Burke adopted Ms. Brody's position, repeatedly submitting papers to the Court indicating that Bowen possessed the gun, but did so in self-defense; and (4) Bowen appears to have pivoted, now arguing that he never possessed the gun at all, it is wholly appropriate to admit evidence of Bowen's admissions through his agent that he did, in fact, possess and fire a gun on July 1, 2017. *See* Fed. R. Evid. 801(d)(2) and 902(4); *Amato*, 356 F.3d at 218–20; *Butler*, 496 F. App'x at 160–61. Accordingly, the Government respectfully requests that the Court permit it to introduce the quoted portions of the bail hearing transcript.

Hon. Nelson S. Román
May 9, 2021
Page 7 of 7

Please feel free to contact us with any questions or issues.

                                      Respectfully submitted,
                                      AUDREY STRAUSS
                                      United States Attorney

By: _____
                                      Benjamin A. Gianforti
                                      Michael D. Maimin
                                      Assistant United States Attorneys
                                      (914) 993-1919 / 1952

Cc:    Michael Burke, Esq. (by electronic mail & ECF)